UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MARIE DEUEL,

                              Plaintiff,

     -against-

TOWN OF SOUTHHAMPTON,

                             Defendants.
----------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
14–CV–2668 (JMA)

A P P E A R A N C E S:

Frank Blangiardo
Blangiardo & Blangiardo Law Offices
333 Manor Lane
Riverhead, New York 11901
    *Attorney for Plaintiff*

Jeltje deJong
Devitt Spellman Barrett, LLP
50 Route 111
Smithtown, New York 11787
    *Attorney for Defendants*

**AZRACK, United States District Judge:**

      Plaintiff Marie Deuel alleges that defendant Town of Southampton (the "Town"), her former employer, discriminated against her based on her age and gender, and retaliated against her because she engaged in protected activity. Defendant moved for summary judgment on all of plaintiff's claims. For the reasons stated below, defendant's motion for summary judgment is granted.

## I. BACKGROUND

### A. Plaintiff's Employment with the Town

Plaintiff was born in 1946 and hired by the Town in 1986. (Def.'s Resp. to Pl.'s 56.1 Statement ("Reply 56.1") ¶¶ 6–7.) She worked for the Town as a laborer until her retirement on May 15, 2014. (Id. ¶¶ 8-9.) The majority of plaintiff's tenure with the Town was spent in the Town's Waste Management Department. Plaintiff was the only female laborer in the Waste Management Department. (Compl. ¶ 23; Dep. of Christine Fetten 45:3–6.)

Certain Town employees play prominent roles in plaintiff's allegations. Phil Milo was one of plaintiff's co-workers. (Reply 56.1 ¶ 32.) John Julian was a laborer crew leader and one of plaintiff's supervisors. (Id. ¶ 21.) Christine Fetten was the Facilities Administrator and another one of plaintiff's supervisors. (Fetten Dep. 55.2–16; Dep. of Marie Deuel 38:7–8.) Thomas Cartino was a shop steward in the Waste Department. (Reply 56.1 ¶ 43.) Cartino was around the same age as plaintiff and was also allegedly discriminated against based on his age. (Cartino Dep. 15:15–19.)

Plaintiff maintains that, during her tenure: (1) Milo and Julian both verbally abused her; (2) the Town, including Fetten, failed to address this abuse; and (3) male employees and younger employees received preferential treatment, including for certain job openings.

### B. Incidents with Phil Milo

In 2003, plaintiff had a verbal altercation with Milo. (Reply 56.1 ¶ 32.) After plaintiff asked Milo to help her, he got mad and threatened her with nasty words. (Id. ¶ 32.) Plaintiff told her supervisor about the encounter and advised her supervisor, "I just don't want to be in the workplace situation with [Milo.]" (Id. ¶ 33.) After this incident, plaintiff was transferred to a different facility away from Milo. (Deuel Dep. 64:19–20.)

Plaintiff was not the only employee to have issues with Milo. In June, 2010, Milo had an altercation with Joseph McGay, a supervisor. (2010 Incident Report, Decl. of Frank Blangiardo Ex. 3.) During this incident, Milo threatened McGay with a broom. (Id.)

Sometime in the summer of 2013, plaintiff had another dispute with Milo, this time about mowing a lawn. (Fetten Dep. 45:23–11.) Although Fetten, a supervisor, was informed of the incident, Fetten did not discuss this incident with Milo. (Id. at 46:12–17, 55:2–16; Deuel Dep. 38:7–8.)

Later, on August 28, 2013, another incident occurred between Milo and plaintiff. (Reply 56.1 ¶ 10.) After plaintiff asked Milo to mow a certain area, he screamed at her that she was not his boss, that he did not have to listen to her, and that he was not going to do any "F--king mowing." (Id. ¶ 10; August 2013 Incident Reports, Blangiardo Decl. Ex. 2.) Milo did not make any physical contact with plaintiff during this incident. (Reply 56.1 ¶ 11.)

The Town has a workplace violence prevention policy. (Id. ¶ 15.) On August 28 and August 29, plaintiff filed incident reports with the Town concerning her August 28th confrontation with Milo. (Id. ¶ 12; August 2013 Incident Reports.)

Milo retired shortly after the August 28, 2013 incident, most likely on August 30, 2013. (Cartino Dep. 22:19–20; Deuel Dep. 12:15–25; September 2013 Memorandum, Blangiardo Decl. Ex. 5.)

On September 30, 2013, Sandra Cirincione, Chairperson of the Workplace Violence Prevention Committee, sent plaintiff a memorandum about the August 28th incident with Milo. (September 2013 Memorandum.) Cirincione's memorandum states that, because Milo retired, the Town no longer had the authority to compel his interview or to discipline him. (Id.) However, Cirincione noted that if Milo were still a Town employee, the Town would have

3

conducted a full investigation and likely would have pursued disciplinary action against Milo. (Id.)  As a result of the incident, Cirincione recommended that management provide better guidance to employees regarding the assignment of work tasks to avoid such incidents in the future.  (Id.)

Plaintiff felt that that the Town's response was inadequate and that one of her supervisors should have held a meeting with all of the employees to discuss the incident with Milo in order to prevent other employees from screaming at co-workers.  (Deuel Dep. 38, 69:25–70:12; Reply 56.1 ¶¶ 19, 38–39.)

## C.  John Julian's Interactions with Plaintiff and Cartino

Julian, who was one of plaintiff's supervisors, would also yell at plaintiff.  (Reply 56.1 ¶ 20; Deuel Dep. 38:16–18.)  Plaintiff, however, admits that Julian also yelled at other employees.  (Reply 56.1 ¶ 25; Deuel Dep. 39:23–25.)

On one occasion after the August 2013 incident with Milo, Julian yelled at plaintiff. (Reply 56.1 ¶ 23; Deuel Dep. 44:1-25, 47:2–7.)  Including that incident, Julian reprimanded plaintiff approximately five times during the last three or four years of plaintiff's employment.  (Reply 56.1 ¶ 22; Deuel Dep. 43:4–47:16.)  Plaintiff verbally complained about Julian to Fetten, who failed to remedy the situation.  (Fetten Dep. 11:7–19, 42:18, 46:22–25.)

According to Cartino, Julian discriminated against him by giving younger employees preferential treatment in employment duties.  (Cartino Dep. 34:22–25.)  Cartino cites to two specific instances of this conduct.  First, Cartino wanted to learn how to drive the tractor and asked Julian about this.  (Id. at 14:4–10.)  Julian, however, refused and gave that work to Mike Harrison, a sanitation helper who was in his late twenties and had only been with the Town for two or three years.  (Id. at 14:4–10, 34:25–35:7.)  Second, Cartino wanted the "scale" duty— a

4

desirable position because it was the only job at the Waste Management Department that was indoors. (Id. at 14:11–19, 15:4–10, 67:12–20.) Cartino, however, did not get this position. Instead, Harrison was given the scale duty even though he did not take the test for that position. (Id. at 35:8–10.) According to Cartino, although "[i]t's not official that [Harrison] got [this position], . . . he was put into that category of working the scale." (Id. at 31:14–32:6.)

Cartino also maintains that Julian took all of the overtime for himself. (Id. at 27:17–28:13.)

### D. The "Machete" Incident

Once, at some unspecified time prior to August 2013, plaintiff opened a shed door and a machete, which "was put up on the inside" of the shed, "came down and . . . just missed [her] head." (Deuel Dep. 71:3–72:2.) Plaintiff does not know who put the machete there, but maintains that whoever did, knew that she would go into the shed. (Id. at 71:7–12.) Plaintiff complained to Fetten about the incident, but "[n]othing was ever said about who put it there or why was it in there." (Id. at 71:7–12.)

### E. Plaintiff's Attempts to Transfer to the Highway Department

Plaintiff suggests that she had previously been discriminated against when, over a decade prior to her retirement, the Town refused multiple requests by her to transfer to the Highway Department.

In 1996, the Sanitation Department where plaintiff worked was abolished and plaintiff's pay was cut. (Deuel Dep. 59:11–60:9.) However, two male employees who had seniority were able to transfer the Highway Department and did not suffer a pay cut. (Id.)

From 1996 until the early 2000s, plaintiff made numerous attempts to transfer to positions in the Highway Department. Male employees obtained these positions instead of plaintiff. Plaintiff suggests that the rationales given for denying her these positions were suspicious. (See id. at 60:10–18 (plaintiff told that male employee received position in Highway Department because, although she had more town-wide seniority, male employee had more seniority in the department), 60:20–61:4 (plaintiff told that male employee, who had only six months experience, received laborer position in Highway Department because it was considered a lateral transfer for the male employee), 61:5–17 (stating that position was given to a male employee and, although plaintiff did apply, she was told her application was not received).)

Plaintiff believes that Bill Matheson, a supervisor at the Highway Department, did not want a female worker for the department. (Id. at 66:15–19.) After plaintiff filed a discrimination suit in 2000, she finally received a position as a laborer in the Highway Department. (Id. at 62:10–63:7.) In 2003, plaintiff left the Highway Department and transferred back to the Waste Management Department. (Id. at 66:25–67:4.)

In 2011, plaintiff attempted to transfer back to the Highway Department; however, that request was denied. (Id. at 67:6–15.) Plaintiff believes that she did not receive this transfer because of her gender. (Id. at 67:23–24.) Plaintiff does not provide any additional details about her 2011 transfer request.

**F. Plaintiff's Complaints of Discrimination and Eventual Retirement**

Sometime in 2012 or 2013, plaintiff mentioned to Cartino, her shop steward, that she believed that the Town "wanted to get us older workers out with the higher salaries." (Reply 56.1 ¶ 43.) Although plaintiff complained to the Town about various other workplace matters, she never complained of discrimination. (Deuel Dep. 77:20–78:3.)

On November 6, 2013, the Town received a notice from the EEOC stating that plaintiff had filed a charge alleging age and gender discrimination. (Cirincione Aff. ¶ 6; EEOC Notice, Cirincione Aff. Ex. C.)

Plaintiff submitted her retirement papers in February 2014 and ultimately retired on May 15, 2014. (Reply 56.1 ¶¶ 8-9; Fetten Dep. 27:8.) When plaintiff retired, a younger female employee who was in her mid-twenties replaced plaintiff. (Cartino Dep. 32:7–21.)

In the instant suit, plaintiff alleges age discrimination, gender discrimination and retaliation in violation of Title VII of the 1964 Civil Rights Act ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*; the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; 42 U.S.C. § 1981; and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"). Plaintiff also asserts a claim under 42 U.S.C. § 1983 for an age-based violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "When ruling on a summary judgment motion, [the court] must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

**B.     Gender and Age Discrimination Claims**

**1. Standard**

For all purposes relevant to this opinion, plaintiff's claims of gender discrimination under Title VII and the NYSHRL are analyzed the same.[1]  See Batchelor v. City of New York, 12 F. Supp. 3d 458, 468 (E.D.N.Y. 2014) (addressing gender discrimination under Title VII and the NYSHRL). Similarly, plaintiff's age discrimination claims under § 1983 and the NYSHRL are analyzed the same as her ADEA claim. See Siani v. State Univ. of N.Y. at Farmingdale, 7 F. Supp. 3d 304, 321–22 (E.D.N.Y. 2014) (addressing age discrimination under the ADEA, § 1983 and the NYSHRL).

When a plaintiff alleges discrimination based on indirect or circumstantial evidence, courts employ the "burden-shifting" framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under McDonnell Douglas, a plaintiff must first establish a *prima facie* case. For a *prima facie* case of gender or age discrimination under Title VII, the ADEA, § 1983, and the NYSHRL, a plaintiff must show that: (1) she is a member of a protected class or age group; (2) she was qualified for the position she held; (3) she suffered an adverse employment action;

---

[1] Plaintiff's complaint alleges a claim under § 1981, which only concerns discrimination based on race, ancestry, ethnic characteristics or alienage. Lewis v. State of Connecticut Dep't of Corr., 355 F. Supp. 2d 607, 620 (D. Conn. 2005). Because plaintiff does not allege any such discrimination in her complaint, her § 1981 claim is dismissed.

8

(4) the adverse action occurred under circumstances creating an inference of discrimination. Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012) (addressing ADEA claims); Leibowitz v. Cornell Univ., 584 F.3d 487, 498 & 498 n. 1 (2d Cir. 2009) (addressing Title VII, ADEA and NYSHRL claims), superseded on other grounds, as recognized in Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 108–109 (2d Cir. 2013); Siani, 7 F. Supp. 3d at 321 (addressing age discrimination under the ADEA, § 1983 and the NYSHRL). Plaintiff's burden, at the *prima facie* stage is "de minimis." Zimmerman v. Assocs. First Capital Corp. 251 F.3d 376, 381 (2d Cir. 2001). An inference of discrimination may be derived from a variety of circumstances such as "the employer's criticism of the plaintiff's performance in ethnically degrading terms," the employer's "invidious comments about others in the employee's protected group," "the more favorable treatment of employees not in the protected group[,] or the sequence of events leading to the plaintiff's discharge." Abdu-Brisson v. Delta Air Lines, Inc., 239 F. 3d 456, 468 (2d Cir. 2001).

After the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, non-discriminatory reason for its action. If the employer articulates such a reason, the burden then shifts back to the plaintiff to prove that the employer's stated reason is pretextual and that discrimination was the actual reason for the adverse action. McDonnell Douglas, 411 U.S. at 802; Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Ruiz v. Cnty. Of Rockland, 609 F.3d 486, 491–492 (2d Cir. 2010). "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Burdine, 450 U.S. at 253).

The analysis for plaintiff's gender and age discrimination claims is similar, with the only material difference being that, for plaintiff's gender discrimination claims, plaintiff must only prove that her gender was a motivating factor behind the adverse action, Weinstock v. Columbia Univ., 224 F.3d 33, 58 (2d Cir. 2000), whereas for plaintiff's age discrimination claim, she must prove that her age was a but-for cause of the adverse action, Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009) (addressing ADEA claim).[2]

**2. Analysis**

For her gender and age discrimination claims, plaintiff suggests that she suffered two adverse actions—a constructive discharge and a denial of overtime. As explained below, defendant is entitled to summary judgment on both claims.

*i. Constructive Discharge*

A constructive discharge occurs when an "'employer, rather than discharging [the plaintiff] directly, intentionally creates a work atmosphere so intolerable that [the plaintiff] is forced to quit involuntarily.'" Petrosino v. Bell Atl., 385 F.3d 210, 229 (2d Cir. 2004) (quoting Terry v. Ashcroft, 336 F.3d 128, 151–52 (2d Cir. 2003)). The question of whether an "employer's deliberate actions rendered the employee's work conditions so intolerable as to compel resignation . . . is assessed objectively by reference to a reasonable person in the employee's position." Id. at 230. In addition, "plaintiff must show that the constructive discharge 'occurred in circumstances giving rise to an inference of discrimination on the basis of [her] membership" in a protected class.'" Cortez v. Connecticut Dep't of Transp., 606 F. Supp. 2d 246, 253 (D. Conn. 2009) (quoting Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 91 (2d

---

[2] This distinction regarding causation is ultimately not material in the specific circumstances of this case. Even assuming that plaintiff's § 1983 and NYSHRL age discrimination claims only require that age be a motivating factor, the Court would still reach the same conclusions on those claims.

Cir. 1996)); see also Mitchell-Miranda v. City of New York, No. 08-CV-4031, 2011 WL 1210202, at *9 (S.D.N.Y. Mar. 24, 2011).

No reasonable jury could find that plaintiff was constructively discharged. Even when viewed in the aggregate, the incidents cited by plaintiff would not force a reasonable person in plaintiff's position to resign. The fact that Milo and Julian yelled at plaintiff is insufficient. See Krachenfels v. N. Shore Long Island Jewish Health Sys., No. 13-CV-243, 2014 WL 3867560, at *15 (E.D.N.Y. July 29, 2014) ("[A]n employee is not constructively discharged because she does not like her assignments, receives unfair criticism, or is yelled at by supervisors.") (quoting Katz v. Beth Israel Med. Ctr., No. 95-CV-7183, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001)). And, the other incidents cited by plaintiff do little to help her constructive discharge claim. While plaintiff disagrees with the Town's response to her August 28, 2013 confrontation with Milo, no reasonable person would feel compelled to resign based on the Town's response. Moreover, the "machete incident" cannot establish a constructive discharge, even when considered in the light most favorable to plaintiff.[3] Finally, plaintiff's reliance on the denial of her 2011 transfer request is misplaced. Plaintiff does not provide any details about this transfer request and, in any event, such a denial is insufficient, even when viewed in light of the other conduct at issue, to establish a constructive discharge.[4] Cf. Jimoh v. Ernst & Young, 908 F. Supp. 220, 226–27 (S.D.N.Y. 1995) (holding that defendant's failure to promote plaintiff and five other allegedly discriminatory acts were insufficient to establish a constructive discharge).

---

[3] Among other things, no reasonable jury could conclude from plaintiff's description of the "machete incident" that this event was the result of a deliberate act by another employee. Moreover, even if a jury could, the only employee that the record suggests may have had any violent tendencies was Milo, and he was no longer working for the Town when plaintiff decided to retire.

[4] Plaintiff does not argue that the denial of her 2011 transfer request constitutes a discrete adverse action. Even if she had, her failure to offer any details about the 2011 transfer request precludes a finding that this was an adverse action. See Gaidasz v. Genesee Valley Bd. of Co-op. Educ. Sys. (Boces), 791 F. Supp. 2d 332, 338 (W.D.N.Y. 2011) (holding that denial of transfer request is not an adverse action unless objective indicators establish that the

Finally, plaintiff's constructive discharge claim also fails because she cannot establish that any of the incidents at issue were motivated by her gender or age.

As an initial matter, plaintiff's conclusory assertions of discrimination in her deposition testimony and affidavit are clearly insufficient to defeat summary judgment. See Payne v. MTA New York City Transit Auth., 349 F. Supp. 2d 619, 627 (E.D.N.Y. 2004) (concluding that plaintiff's "unsubstantiated, subjective belief, as embodied in his deposition testimony" that employer attempted to remove him from his position because of his race was insufficient to withstand summary judgment). Similarly, Cartino's belief that plaintiff was discriminated against is similarly deficient.

Moreover, the specific facts in the record cannot establish discrimination. The mere fact that plaintiff was the only female employee in her department is insufficient. And, nothing indicates that Milo's treatment of plaintiff was due to her gender or age. See Alfano v. Costello, 294 F.3d 365, 378 (2d Cir. 2002) ("Facially neutral incidents may be included, of course, among the 'totality of the circumstances' that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on sex. But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory.")

Plaintiff suggests that Julian discriminated against Cartino, another older worker, and that, from this discrimination, a jury could infer that Julian's conduct towards her was based on her age. According to Cartino, Julian discriminated against him by giving certain job assignments that Cartino had sought to younger employees. However, Cartino's testimony is not

---

requested position was materially more advantageous). Moreover, no reasonable jury could conclude that the denial of plaintiff's 2011 transfer request was discriminatory. The denials of plaintiff's earlier transfer requests are insufficient to establish discrimination. Those earlier denials occurred a decade before the 2011 transfer request and plaintiff has not offered any evidence suggesting that the same decision-makers were involved in the 2011 transfer request.

sufficient to raise an inference of age discrimination for any of Julian's actions toward plaintiff, particularly in light of plaintiff's concession that Julian also yelled at other employees. Moreover, there is no evidence that Julian played any role in some of the incidents underlying the alleged constructive discharge.

Finally, plaintiff implies that her unsuccessful attempts to transfer to the Highway Department a decade before the events at issue in this suit are suggestive of discrimination here. No evidence, however, indicates that any of the decision-makers involved in those transfer attempts played any role in the incidents currently at issue. Moreover, those transfer denials are so remote in time that they have little, if any, probative value to the instant claims of discrimination.

### ii. Denial of Overtime

Plaintiff's brief in opposition to summary judgment asserts that Julian discriminated against her regarding his assignment of overtime. Plaintiff, however, did not mention overtime anywhere in her complaint. That alone is reason to grant summary judgment on any claim concerning overtime. Moreover, even assuming plaintiff's overtime claim is properly before the Court, that claim is meritless. Cartino's deposition testimony merely indicates that Julian took all of the overtime for himself. (Cartino Dep. 27:17–28:13.) Cartino did not assert that any of Julian's younger underlings received overtime or that overtime was allocated to Julian's underlings in a discriminatory manner. Accordingly, no reasonable juror could find that plaintiff was discriminated against regarding the assignment of overtime.

## C. Retaliation

For all purposes relevant to this opinion, plaintiff's retaliation claims under Title VII, the ADEA, § 1983, and the NYSHRL are analyzed the same–each of these claims follow the

McDonnell Douglas framework. Bucalo, 691 F.3d at 129 (addressing Title VII and ADEA retaliation claims); Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 219 (E.D.N.Y. 2014) (addressing Title VII, § 1983 and NYSHRL retaliation claims). To make out a *prima facie* case of retaliation, a plaintiff must establish: "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" Bucalo, 691 F.3d at 129 (2d Cir. 2012) (quoting Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005)).

A plaintiff can establish a causal connection either: "'(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by defendant.'" Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010) (quoting Gordon v. N.Y. City Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)).

While plaintiff baldly asserts that she was retaliated against, she never attempts to explain how she meets each of the elements of a *prima facie* case of retaliation. In any event, plaintiff's retaliation claims are patently deficient.

In order for an employee's complaint to constitute protected activity under the statutes at issue, the complaint must be such that the employer could reasonably have understood that the plaintiff was complaining about gender or age discrimination. Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 108 (2d Cir. 2011). Generalized complaints about the workplace do not qualify as a protected activity. Id. Here, there are only three instances of protected activity

14

in the record.  Plaintiff, however, does not have a viable retaliation claim stemming from any of this protected activity.

First, plaintiff filed a discrimination suit in 2000.  Plaintiff, however, cannot establish a causal connection based on temporal proximity alone—the 2000 suit occurred years before the events at issue here.  And, no other evidence in the record suggests a causal connection.

Second, at some unspecified time in 2012 or 2013, plaintiff said to Cartino, her shop steward, that the Town "wanted to get us older workers out with the higher salaries."  Plaintiff, however, cannot establish any causal connection between that statement and any of the subsequent events at issue, such as the Town's handling of her complaint about Milo and Julian yelling at her on one occasion.  Among other things, no reasonable jury could find that the employees involved in those events, such as Julian and Cirincione, had any knowledge of plaintiff's statement to Cartino.  See Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 147 (2d Cir. 2010) (explaining that, although a plaintiff is not required to present direct evidence that the relevant decision-maker was aware of the plaintiff's protected activity, there must be circumstantial evidence of such knowledge or evidence that decision-maker was acting explicitly or implicitly on the orders or encouragement of someone with such knowledge).

Moreover, none of the events that occurred after plaintiff's statement to Cartino rise to the level of an adverse action for purposes of a retaliation claim because those events were not "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006).

Third, plaintiff filed an EEOC charge in November 2013. Plaintiff, however, does not identify any relevant events that occurred after she filed the EEOC charge. Accordingly, her retaliation claim premised on that charge fails.

### III. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted. The Clerk of Court is directed to enter judgment accordingly and close the case.

**SO ORDERED.**

          /s/ (JMA)
Joan M. Azrack
United States District Judge

Date: July 16, 2015
      Central Islip, New York